IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CLYDE VASQUEZ, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 4:24-cv-00595-O |
| § | |
| BRYAN LAFAURIE, § | |
| § | |
| Defendant. § | |

## **OPINION & ORDER**

Before the Court is Plaintiffs' Motion for Default Judgment ("Motion") against Bryan LaFaurie ("Defendant") (ECF No. 11), filed October 4, 2024. The Clerk entered default as to Defendant on September 5, 2024.[1] After considering the Motion, the pleadings, and applicable law, the Court holds that Plaintiffs' Motion should be, and is hereby, **GRANTED**.

### I.   BACKGROUND[2]

This is a suit arising from police misconduct. On July 8, 2022, off-duty Fort Worth Police Officer Bryan LaFaurie forced his way into a Fort Worth residence and threatened three brothers, S.C.,[3] Clyde Vasquez, and Nathaniel Vasquez ("Plaintiffs"), at gunpoint. Clyde was 18 years old, Nathaniel was 17 years old, and S.C. was 15 years old. Plaintiffs lived at the residence at the time.

Defendant, believing that Plaintiffs had stolen his bicycles, arrived at their home wearing his police badge and charged into an open garage, pointing a pistol at Clyde's face. Clyde closed

---

[1] *See* Clerk's Entry of Def., ECF No. 8.
[2] Unless otherwise noted, facts are taken from Plaintiffs' Complaint or Plaintiffs' Appendix in Support of Motion for Default Judgment. *See* Pls.' Compl., ECF No. 1; Pls.' App. Supp. Mot. Def. J. (S.C. Aff.), ECF No. 12; Pls.' App. Supp. Mot. Def. J. (Nathaniel Aff.), ECF No. 12-1; Pls.' App. Supp. Mot. Def. J. (Clyde Aff.), ECF No. 12-2.
[3] Because S.C. is a minor, he is officially represented in this suit by his mother, Stephanie Sisneros, as next friend. But for the purpose of this Order, "Plaintiffs" refers to the three brothers.

the door, locked it, and held it shut, prompting Defendant to announce, "Fort Worth Police," before shouting obscenities such as, "you want to steal my shit?!," "you mother fuckers want to take my bikes," and "open the fucking door." Defendant repeatedly attempted to force his way into the home through the garage door, which Clyde held shut, before exiting the garage to get in through another entrance. Nathaniel and S.C. ran through the home to lock the remaining entrances in an "attempt[] to keep the doors closed to a screaming madman with a gun yelling about bicycles." Nathaniel opened the front door, yelling out for Defendant to "just leave," then closed and locked the door. Just after Nathaniel locked the front door, Defendant kicked in and broke down that door, smashing it into Nathaniel's head.

Once inside, Defendant pointed his gun at each of the Plaintiffs, telling them that he would shoot them if they did not "get the fuck down" and "hold still." Plaintiffs complied—all were worried that Defendant would shoot and kill them. Nathaniel dropped to the ground, urinated out of fear, and pleaded for his life. Eventually, Defendant left the home with two bicycles.

At no time were Plaintiffs suspected of a felony or violent crime, at no point did Plaintiffs attempt to evade arrest, and at no point did Plaintiffs consent to Defendant's forceful entry. Defendant "at most, . . . had probable cause of a misdemeanor bicycle theft," and had no warrant or exigent circumstances to enter the home. After the incident, Plaintiffs have varyingly suffered nightmares, anxiety, trouble eating and sleeping, social isolation, and emotional distress.

Accordingly, Plaintiffs filed this action on June 25, 2024, and personally served Defendant with a copy of the Complaint on July 2, 2024.[4] Defendant defaulted by failing to respond to the Complaint within 21 days of being served. FED. R. CIV. P. 12(a)(1)(A)(i). Accordingly, the Court ordered Plaintiffs to move for default judgment against Defendant.[5] The Clerk entered default as

---

[4] *See* Summons, ECF No. 5.
[5] Aug. 21, 2024, Order, ECF No. 6.

2

to Defendant on September 5, 2024.[6] Plaintiffs then filed the instant Motion for Default Judgment seeking punitive damages, reasonable attorney's fees, and costs of court.[7] The docket reflects that Defendant has remained unresponsive to date.

## II. LEGAL STANDARD

### A. Default Judgment

Federal Rule of Civil Procedure 55 governs the entry of default and subsequent default judgment. The Court's entry of default judgment entails three prerequisites. *N.Y. Life Ins. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, the defendant must *default* by failing to plead or otherwise respond to the complaint within the time required by the Federal Rules. *Id.* Next, the Clerk must *enter default* when the plaintiff establishes default by affidavit or otherwise. *Id.*; FED. R. CIV. P. 55(a). Last, the plaintiff must ask the Court for entry of a *default judgment*. *N.Y. Life Ins.*, 84 F.3d at 141; FED. R. CIV. P. 55(b)(2).

A court has broad discretion to enter a default judgment, but it is considered "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). It is reserved for instances "when the adversary process has been halted because of an essentially unresponsive party." *Id.*

In deciding whether to grant a default judgment, the Court must decide three questions. First, the Court considers whether entry of default judgment is procedurally appropriate by weighing a list of six factors: (1) whether there are disputed material issues of fact; (2) whether a good faith mistake or excusable neglect caused the default; (3) whether there has been substantial prejudice; (4) the harshness of a default judgment; (5) whether the grounds for a default judgment

---

[6] Clerk's Entry of Def., ECF No. 8.
[7] Pls.' Mot. Def. J. 2, ECF No. 11.

are clearly established; and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Second, the Court assesses the merits of the plaintiff's claims and the sufficiency of the complaint. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.").

And third, the Court resolves any remaining issues regarding the requested amount of damages, if any, and other relief requested. "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). But a default judgment does not itself establish the *amount* of damages. *Id.*; *Howard v. Weston*, 354 F. App'x 75, 76 (5th Cir. 2009) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."). Rather, movants for default judgment must provide a detailed factual basis in support of their request for damages. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

### III.   ANALYSIS

#### A.  Entry of default judgment is procedurally appropriate.

Having weighed the six *Lindsey* factors, the Court finds that granting default judgment is procedurally warranted. First, due to Defendant's non-responsiveness, no material issues of fact have been disputed. Second, there is no evidence to suggest that Defendant's failure to defend this action arises from a "good faith mistake or excusable neglect." Third, Defendant's failure to appear causes substantial prejudice to Plaintiffs because it prevents them from receiving expeditious relief. Fourth, Defendant's failure to respond, despite receiving proper service, mitigates the harshness of a default judgment. Defendant has had ample time to respond to the Complaint, as

Defendant was properly served two months before Plaintiffs requested an entry of default. Fifth, the grounds for default judgment are clearly established.[8] Sixth and finally, finding that Defendant has made no attempt to participate in this lawsuit in the five months since it was commenced, and because the Court is not aware of any "good cause" for his failure to participate, the Court would be unlikely to set aside the default if it is later attacked. *See* FED. R. CIV. P. 55(c).

### B. The pleadings establish viable claims for relief and a sufficient basis to enter default judgment.

Here, Plaintiffs assert four causes of action against Defendant: (1) illegal seizure in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983; (2) illegal search in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983; (3) false imprisonment under Texas law; and (4) assault under Texas law.[9] Having considered the pleadings, the Court finds Plaintiffs have established a sufficient basis to enter default judgment on all claims.

The Court accepts the well-pleaded allegations in Plaintiffs' Complaint as true. *Nishimatsu*, 515 F.2d at 1206. "Given [his] default, Defendant[] ha[s] admitted the well-pleaded facts set forth in the complaint." *Ford Motor Credit Co. LLC v. Hancock*, 2015 WL 13118076, at *3 (N.D. Tex. Mar. 16, 2015). At the default-judgment stage, the well-pleaded factual allegations "need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[D]etailed factual allegations are not required." *Id.* (alteration in original) (quotation marks and citation omitted).

---

[8] *See supra* notes 4–7.
[9] Pls.' Compl. ¶¶ 52–111, ECF No. 1.

1. <u>Plaintiffs establish valid § 1983 claims for illegal search and seizure.</u>

Plaintiffs allege that Defendant's actions violated Plaintiffs' Fourth Amendment protections against unreasonable search and seizure, pursuant to § 1983.[10] U.S. CONST. amend. IV. The Court agrees that Plaintiffs have stated viable claims for relief.

There are two essential elements to a § 1983 action: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

    a. *"Under color of state law"*

Plaintiffs allege Defendant was acting under the color of state law when he committed the conduct in question.[11] In *Screws v. United States*, the Supreme Court explained that "under 'color' of law means under 'pretense' of law." 325 U.S. 91, 111 (1945). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 49–50 (1988). Moreover, whether a police officer is acting under color of law does not depend on duty status at the time of the alleged violation. *Garner v. Wallace*, 139 F. Supp. 2d 801, 803 (E.D. Tex. 2001). "[A]n off duty officer case does require a close examination of the particular facts and circumstances to determine whether the officer exercised state power or was involved in a purely private dispute." *Id.*

Here, even though Defendant was recovering *his* bicycles, the dispute was not a private one.[12] Defendant was employed as a Fort Worth Police Officer, and, despite not being at work that day, Defendant was wearing his Fort Worth Police Department badge and carrying his firearm.[13]

---

[10] *Id.* ¶¶ 52–95.
[11] *Id.* ¶¶ 17, 72, 81.
[12] *Id.* ¶ 11.
[13] *Id.* ¶¶ 8, 12.

When he arrived at the house, he announced himself as "Fort Worth Police," and he continued yelling "Fort Worth Police" while banging on the door.[14] Once inside, Defendant effectively arrested Plaintiffs by commanding them to get down while pointing his firearm at them.[15] These circumstances indicate that Defendant was acting under the "pretense" of his authority as a Fort Worth Police Officer, and thus, "under color of state law." *Screws*, 325 U.S. at 111.

### b. Deprivation of constitutional right

Plaintiffs also argue Defendant deprived them of their constitutional rights by way of Defendant's illegal search of their home and seizure of their persons.[16] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.

### i. Illegal seizure

Plaintiffs' first § 1983 claim is based on Defendant's illegal seizure of Plaintiffs.[17] "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). This occurs when an officer "'*objectively* manifests an intent to restrain' the liberty of an individual through either use of physical force or a show of authority" to which the individual submits. *United States v. Wright*, 57 F.4th 524, 530–31 (5th Cir. 2023) (emphasis in original) (quoting *Torres v. Madrid*, 592 U.S. 306, 317 (2021)); *see also California v. Hodari D.*, 499 U.S. 621, 626 (1991) (adding the requirement that a subject must submit to a show authority). "Examples of circumstances that might indicate a seizure" include "the display of a weapon by an officer" or "the use of language

---

[14] *Id.* ¶¶ 13–14.
[15] *Id.* ¶¶ 28–34.
[16] *Id.* ¶¶ 52–95.
[17] *Id.* ¶¶ 52–72.

or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554.

Here, a seizure occurred when Defendant knocked down the door to the home, displayed and brandished his pistol, aimed the weapon at Plaintiffs, and used volatile language and tone to compel Plaintiffs to obey his commands, including "get the fuck down," while threatening to shoot them if they did not comply.[18] Plaintiffs submitted to Defendant's show of authority by getting down and staying still.[19] A reasonable person in each of Plaintiffs' circumstances "would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554.

Given that Plaintiffs were seized within the meaning of the Fourth Amendment, the Court now turns to whether the seizure was justified. "The manner in which the seizure and search were conducted is, of course, as vital a part of the inquiry as whether they were warranted at all." *Terry v. Ohio*, 392 U.S. 1, 28 (1968). Here, even if Defendant suspected Plaintiffs stole his bicycles, there is no legal justification for breaking and entering their home and effectively arresting the Plaintiffs by brandishing his firearm at them, telling them to get down, and threatening to shoot them. No conditions justified Defendant's *threat* of deadly force. Bicycle theft is at most, a misdemeanor. And even at common law, officers could not use whatever force they deemed necessary to apprehend misdemeanants. *See Tennessee v. Garner*, 471 U.S. 1, 12, 14–15 (1985). Additionally, Plaintiffs were unarmed and fully complied with Defendant's commands. *Cf. id.* at 11 (justifying the use of deadly force when "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, . . . [and] to prevent escape").

---

[18] *Id.* ¶¶ 67, 70–71.
[19] *Id.* ¶ 69.

In sum, given Defendant's disproportionate, unprovoked, and unjustified exercise of power under the pretense of his authority as a Fort Worth Police Officer, Plaintiffs present a valid illegal seizure claim under 42 U.S.C. § 1983, such that default judgment against Defendant is warranted.

### ii.    Illegal search

Plaintiffs' second § 1983 claim is based on Defendant's illegal search of their home.[20] U.S. CONST. amend. IV. Warrantless entry into a home is presumptively unreasonable, unless the person consents, or probable cause and exigent circumstances exist to justify a search. *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001). The Supreme Court has recognized a few exigencies that justify warrantless entry into a home: (1) the need to "render emergency assistance to an injured occupant or to protect an occupant from imminent injury," *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006); (2) the need to prevent the imminent destruction of evidence, *Ker v. California*, 374 U.S. 23, 39 (1963) (plurality opinion); and (3) the need to engage in "hot pursuit" of a fleeing felony suspect, *United States v. Santana*, 427 U.S. 38, 43 (1976). "[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches." *Welsh v. Wisconsin*, 466 U.S. 740, 749–750 (1984).

Here, Defendant had no search warrant to enter the home and no arrest warrant to arrest Plaintiffs for a crime.[21] Defendant also did not have consent to enter the home—to the contrary, Plaintiffs were actively trying to keep the doors closed to keep Defendant out of the home.[22] Neither could Defendant identify exigent circumstances for a warrantless entry.[23] Defendant was not aware of anyone needing medical attention in the home, he was not reasonably concerned that the evidence would be destroyed if he did not enter the home at that time, and he was not in hot

---

[20] *Id.* ¶¶ 73–95.
[21] *Id.* ¶¶ 43, 84.
[22] *Id.* ¶ 86.
[23] *Id.* ¶¶ 88–90.

pursuit of a felony suspect who fled into the home.[24] Accordingly, there was no lawful basis for Defendant to enter Plaintiffs' home. Thus, Plaintiffs present a valid illegal search claim under 42 U.S.C. § 1983, such that default judgment against Defendant is warranted.

### 2. Plaintiffs establish a valid false-imprisonment claim.

Plaintiffs allege that Defendant falsely imprisoned each Plaintiff under Texas law.[25] The Court agrees with Plaintiffs. The elements of a false-imprisonment claim are: (1) willful detention by Defendant; (2) without consent of Plaintiffs; and (3) without authority of law. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). Situations where an individual yields to "the assertion of legal authority . . . must be treated as no consent at all, but submission against [a] plaintiff's will." *City of Watauga v. Gordon*, 434 S.W.3d 586, 591 (Tex. 2014) (alteration in original).

Here, Defendant threatened Plaintiffs with serious bodily injury if they did not comply with his orders to "hold still" and "get the fuck down."[26] Defendant's willful detention was without the consent of Plaintiffs.[27] And Defendant did not have authority to detain Plaintiffs in this manner, as he did not have a warrant or probable cause to arrest them, and no other exigent circumstances existed.[28] Accordingly, Plaintiffs have presented a valid false-imprisonment claim under Texas law sufficient for the Court to enter default judgment against Defendant.

---

[24] *Id.*
[25] *Id.* ¶¶ 96–104.
[26] *Id.* ¶¶ 31, 98.
[27] *Id.* ¶ 99.
[28] *Id.* ¶ 100.

### 3. Plaintiffs establish valid assault claims.

Plaintiffs argue that Defendant committed assault under Texas law against Nathaniel by slamming the door into him, and against all Plaintiffs by aiming his pistol at each of them and threatening to shoot them.[29] The Court agrees with Plaintiffs. An assault occurs when a defendant:

(1) intentionally, knowingly, or recklessly causes bodily injury to another . . . ;

(2) intentionally or knowingly threatens another with imminent bodily injury . . . ; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

*Watauga*, 434 S.W.3d at 590 (alterations in original) (quoting TEX. PEN. CODE § 22.01(a)).[30]

Here, Defendant committed assault when he slammed the front door into Nathaniel and intentionally or knowingly threatened all Plaintiffs with imminent bodily injury. When Defendant smashed a door against his head, Nathaniel "immediately felt disoriented" by the resulting pain, and Defendant proceeded to threaten Plaintiffs to obey his commands or be faced with imminent bodily injury.[31] Accordingly, Nathaniel has presented a valid assault claim and Plaintiffs collectively have presented a valid assault claim to warrant default judgment against Defendant.

### C. Plaintiffs are only partially entitled to their requested relief.

Plaintiffs seek punitive damages, costs of court, and reasonable attorney's fees.[32] Having examined the briefing and applicable law, the Court decides that a punitive damages award totaling

---

[29] *Id.* ¶¶ 105–11.
[30] "Reliance on the criminal assault statute has led . . . Texas civil courts to meld common-law concepts of assault and battery under the rubric of assault." *Watauga*, 434 S.W.3d at 589. The State Bar of Texas's pattern jury charge has used the Texas Penal Code's definition of assault at § 22.01(a) in civil cases. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 800–01 (Tex. 2010).
[31] Pls.' App. Supp. Mot. Def. J. (Nathaniel's Aff.) ¶ 11, ECF No. 12-1.
[32] Pls.' Mot. Def. Judgment 1, ECF No. 11.

$30,000 is appropriate. There is insufficient evidence for the Court to determine attorney's fees and costs of court at this time.

1. Punitive damages are appropriate under § 1983.

Each Plaintiff requests $50,000 in punitive damages, totaling $150,000.[33] Plaintiffs do not request compensatory damages. The Court decides that punitive damages are warranted, but only in the amount of $10,000 for each Plaintiff.

Punitive damages are distinct from compensatory damages. The purpose of punitive damages is "to punish the defendant for his willful or malicious conduct and to deter others from similar behavior"—not to compensate plaintiffs for their injuries. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986). While damages in § 1983 cases are usually compensatory, intended "to compensate persons for injuries that are caused by the deprivation of constitutional rights," *Carey v. Piphus*, 435 U.S. 247, 254 (1978), the Supreme Court has held that punitive damages may be available, too. *Smith v. Wade*, 461 U.S. 30, 35 (1983).

Punitive damages may be awarded in § 1983 cases "when the defendant's conduct is shown to be motivated by evil malice or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017) (quoting *Smith*, 461 U.S. at 56). "[R]eckless indifference has been described as a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." *Henry v. Corpcar Servs. Hous., Ltd.*, 625 F. App'x 607, 614 (5th Cir. 2015). An award of punitive damages in § 1983 cases need not be premised upon an award of compensatory damages. *Wilson v. Taylor*, 658 F.2d 1021, 1033 (5th Cir. 1981). Though municipalities are immune from punitive damages pursued

---

[33] *Id.* at 3–5.

under § 1983, this immunity does not extend to an individual defendant sued in his personal capacity. *See Smith*, 461 U.S. at 36 n.5.

Although there is no bright line for when punitive damage awards become excessive, the Supreme Court has identified three "guideposts" to consider: (1) the degree of "reprehensibility" of the defendant's conduct, (2) the disparity between the actual harm suffered—usually measured by actual damages—and the punitive damages award; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). Of these three factors, "reprehensibility" is the "most important indicium" of a punitive award's reasonableness. *Id.* In assessing reprehensibility, courts consider whether:

> [1] the harm caused was physical as opposed to economic; [2] the [wrongful] conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 419 (2003).

Here, punitive damages are available because Defendant demonstrated a "reckless indifference" to the federally protected rights of Plaintiffs. *Heaney*, 846 F.3d at 803. As a police officer, Defendant certainly possesses "a subjective consciousness" of what is and is not sanctioned by the Fourth Amendment. *Henry*, 625 F. App'x at 614. A police officer would know he has *no* authority to break into a home without a warrant, without probable cause, and absent an exigency. And yet, Defendant's disregard for the Fourth Amendment did not end at breaking and entering into Plaintiffs' residence. By brandishing his firearm and threatening deadly force without any provocation or threat to his person, Defendant's use of force was wholly unjustified and reflected a "criminal indifference to civil obligations." *Id.*

Turning to the *BMW* and *Campbell* factors, the Court holds that the requested damages amount totaling $150,000 is excessive, and that $10,000 for each Plaintiff—or $30,000 total—is a reasonable award, as explained below. This amount accounts for the reprehensibility of Defendant's conduct while being "consistent with constitutional constraints." *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1016 n.78 (5th Cir. 2003) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 164 (2nd Cir. 2001)).

As to reprehensibility, several of "the circumstances ordinarily associated with egregiously improper conduct" are present here. *BMW*, 517 U.S. at 580. Defendant's harm to Plaintiffs was not purely economic. Nathaniel suffered physical harm when Defendant slammed a door into his head, and all Plaintiffs have suffered and continue to suffer severe emotional harm.[34] Defendant showed a reckless disregard for Plaintiffs' physical safety and constitutional rights. And Defendant's conduct was no mere accident but instead was the result of "malice, trickery, [and] deceit," by abusing the power entrusted to him as a Fort Worth police officer to intimidate and subdue Plaintiffs for his private purpose. *Campbell*, 538 U.S. at 419.

The second *BMW* factor—the ratio between the actual harm and punitive damages award—is inapplicable in cases such as this, absent actual damages. *See Williams*, 352 F.3d at 1016 n.76. Nonetheless, "[t]he Second Circuit concluded that $10,000 in punitive damages when only nominal damages were awarded 'approaches the limits of what we would deem consistent with constitutional constraints.'" *Id.* at 1016 n.78 (quoting *Provost*, 262 F.3d at 164). Finally, the third *BMW* factor—comparison between the punitive damages requested here and those awarded in

---

[34] Pls.' App. Supp. Mot. Def. J. (S.C. Aff.), ECF No. 12; Pls.' App. Supp. Mot. Def. J. (Nathaniel Aff.), ECF No. 12-1; Pls.' App. Supp. Mot. Def. J. (Clyde Aff.), ECF No. 12-2.

similar civil rights actions—justifies an award of $10,000 per Plaintiff.[35] *See id.* at 1016 (awarding punitive damages of $15,000, along with nominal damages, in an unlawful strip-search case).

Accordingly, $30,000 total punitive damages award is appropriate under the facts and circumstances in this case.

### 2. Plaintiffs are not currently entitled to attorney's fees and costs of court.

Last, Plaintiffs request attorney's fees and costs of court.[36] To ensure that certain federal rights are adequately enforced, Congress enacted 42 U.S.C. § 1988, which provides that a "prevailing party" in certain civil rights actions, including § 1983 actions, may recover "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); *Fox v. Vice*, 563 U.S. 826, 832–33 (2011). Courts in the Fifth Circuit primarily use the "lodestar" method to calculate whether an attorney's fees are reasonable. *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002). However, here, Plaintiffs have not submitted the required documentation to assist this Court with a lodestar calculation. Accordingly, the Court declines to grant an award of court costs or attorney's fees. Plaintiffs may file a motion to recover attorney's fees at a later date.

## IV.  CONCLUSION

For the forgoing reasons, the Court **GRANTS** Plaintiffs' Motion. Accordingly, the Court enters default judgment as follows:

(1) Nathaniel Vasquez shall be awarded punitive damages in the amount of $10,000;

(2) Clyde Vasquez shall be awarded punitive damages in the amount of $10,000; and

(3) S.C., via his next friend of a minor, Stephanie Sisneros, shall be awarded punitive damages in the amount of $10,000.

---

[35] Plaintiffs do not proffer any analogous cases (or present any arguments concerning the *BMW* factors for that matter), and thus, the Court does not undertake an expedition to identify all comparable cases.
[36] Pls.' Mot. Def. J. 1, ECF No. 11.

**SO ORDERED** on this **26th day** of **December, 2024**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**